United States District Court
Southern District of Texas
**ENTERED**
February 15, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MILTON KEITH PERKINS, <br> (TDCJ # 928414, TN Inmate # 306588), <br><br> *Plaintiff,* <br><br> vs. <br><br> LONNIE TOWNSEND, *et al.*, <br><br> *Defendants.* | § § § § § § § § § § § § | CIVIL ACTION NO. H-21-3962 |

### MEMORANDUM OPINION AND ORDER

Plaintiff Milton Keith Perkins, a former Texas state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 against Texas Department of Criminal Justice ("TDCJ") employee Senior Warden Lonnie Townsend; and University of Texas Medical Branch ("UTMB") employees Dr. Edgar Hulipas, Nurse Practitioner Martha L. Beck, and Physician's Assistant Robert D. Wilkins. (Docket Entry No. 1). The Court ordered the defendants to file a response, (Docket Entry No. 6), and they responded with a motion to dismiss. (Docket Entry No. 8). Perkins filed a response to the motion. (Docket Entry No. 14). Having considered the motion, the complaint and its attachments, the response and its attachments, and the applicable law, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss for the reasons explained below.

### I. BACKGROUND AND CLAIMS

Perkins is a former TDCJ inmate who is now confined in the Riverbend Maximum Security Institution in Tennessee. In his civil rights complaint, Perkins alleges that the

defendants were deliberately indifferent to two serious medical conditions that he suffered while confined at TDCJ's Jester III Unit: a skin cancer and Hepatitis C. (Docket Entry No. 1). Perkins attached medical records to his complaint that he contends support his claims. (Docket Entry No. 1-1).

As to the skin cancer, Perkins alleges that he first noticed a lesion on his left temple in early to mid-February 2020. (Docket Entry No. 1, p. 5). When the lesion started growing quickly, Perkins submitted a sick-call request to the medical department, and he was seen by Nurse Beck on March 4, 2020. (Docket Entry Nos. 1, p. 5; 1-1, p. 2). Perkins alleges that Nurse Beck immediately stated that she "did not like the look of" the lesion and that it appeared to her to be a possible skin cancer. (Docket Entry No. 1, p. 5). Nurse Beck walked Perkins to see Dr. Hulipas, and he agreed that the lesion appeared likely to be a skin cancer. (*Id.*). Dr. Hulipas directed Nurse Beck to make an expedited appointment for Perkins with the dermatology department at UTMB's Hospital Galveston. (*Id.*). Perkins told Nurse Beck and Dr. Hulipas that he had been granted parole and was scheduled to be released shortly. (*Id.*).

The medical records attached to Perkins's complaint confirm that Dr. Hulipas ordered that the referral be expedited. (Docket Entry No. 1-1, p. 2). However, additional medical records attached to Perkins's response to the motion to dismiss show that, despite the apparent seriousness of Perkins's condition and his imminent release from TDCJ custody, the Hospital Galveston dermatology appointment was scheduled for more than a

month later, on April 7, 2020.[1] (Docket Entry No. 14-2, p. 4).

On March 18, 2020, Perkins submitted another sick-call request to medical, reporting that the lesion was larger and "oozing badly." (*Id.* at 3). He did not report any pain or discomfort on the sick-call request. (*Id.*). The medical department apparently did not examine Perkins in response to this request, but instead simply responded by telling him to be sure to keep his Hospital Galveston appointment. (*Id.*).

On April 8, 2020, Perkins went to the medical department because the lesion had grown much larger and was draining fluid. (Docket Entry No. 1, p. 6). He was also concerned because he had not yet been transported to Hospital Galveston to see the dermatologist. (*Id.*). Both Nurse Beck and another medical department employee, one Mrs. Whitaker, determined that the appointment had been canceled by Hospital Galveston "due to covid 19." (Docket Entry No. 14-2, p. 4). Nurse Beck rescheduled the appointment for April 21, 2020. (*Id.*). In the interim, she prescribed pain medication and an antibiotic for Perkins. (*Id.* at 4-5). She also emailed Hospital Galveston to try to secure an earlier appointment. (*Id.* at 5).

Perkins alleges that he had a telehealth appointment with the Hospital Galveston dermatologist two to three weeks later.[2] (Docket Entry No. 1, p. 6). The dermatologist

---

[1]Because Perkins relies on these records in opposing the defendants' motion and because the defendants have not objected to the use of these records, the Court will consider them in ruling on the defendants' motion to dismiss. *See, e.g., Collins v. Morgan Stanley Dean Witter*, 244 F.3d 496, 498-99 (5th Cir. 2000) (affirming district court's reliance on documents attached to motion to dismiss when neither party objected to the documents and the documents were intended to "assist[] the plaintiff in establishing the basis for the suit").

[2]Neither the medical records attached to Perkins's complaint nor those attached to his

3

indicated that the lesion appeared to be a skin cancer, that it should be biopsied, and that she would schedule the biopsy appointment. (*Id.*). Perkins told the dermatologist that he was scheduled to be released from TDCJ soon. (*Id.*). Nothing in the records before the Court shows when, or if, the biopsy was scheduled.

Perkins alleges that on several days between mid-March and early May, he saw Warden Townsend when the warden was in the boiler room where Perkins worked. (*Id.* at 7). Perkins alleges that Warden Townsend offered to help secure an earlier appointment for him with Hospital Galveston, going so far as to take his name and TDCJ number and say he would "see what he could do." (*Id.*). Despite this, Perkins was never notified of an earlier date for his appointments. (*Id.*)

On May 4, 2020, Perkins was paroled and extradited to Tennessee without having had a biopsy or any treatment for his skin cancer. (*Id.*). As Perkins was being processed for release, Warden Townsend told Perkins that he had "tried to do what he could" to get Perkins treatment before he was released. (*Id.*). Perkins alleges that Warden Townsend "did not sound convincing" when he said this. (*Id.*). Ultimately, the lesion was diagnosed by physicians in Tennessee as a squamous cell carcinoma, and the tumor was surgically removed in July 2020.[3] (*Id.* at 8-13). Perkins alleges that he was forced to undergo a much

---

response include a record of this telehealth visit. However, based on the available records and Perkins's allegations, the visit occurred sometime between April 9 and May 1, 2020.

[3]Perkins's complaint contains extensive allegations about the delays and problems he had in securing treatment once he was extradited to Tennessee. (Docket Entry Nos. 1, pp. 8-13; 1-1, pp. 15-109, 117-41). This Court has no jurisdiction over defendants located in and events that occurred in Tennessee, and the Court ordered the defendants to respond only to the allegations relating to Perkins's time in TDCJ custody.

4

more extensive surgery than would have been the case had he received prompt and adequate care while in TDCJ custody.

As to Perkins's claim concerning his Hepatitis C, he alleges that he was diagnosed with that disease in June 2000. (*Id.* at 14). He alleges that he sought treatment during the entire twenty years he was in TDCJ custody, but he was repeatedly told he did not qualify. (*Id.*). Perkins alleges that P.A. Wilkins diagnosed him with "significant fibrosis of the liver" in May 2019, but he was still never offered treatment. (Docket Entry Nos, 1, p. 14; 1-1, pp. 111-16.). Perkins also alleges that even after his "APRI score"[4] exceeded TDCJ's guidelines for treatment, P.A. Wilkins neither offered nor provided him with treatment. (Docket Entry No. 1, p. 16). Perkins contends that this refusal to treat him resulted in his condition worsening over time. (*Id.*).

Perkins sues the defendants in both their official and individual capacities based on their alleged deliberate indifference to his serious medical needs. (Docket Entry No. 1, p. 15). As relief, he seeks $2 million in compensatory damages and $2 million in punitive damages. (*Id.* at 15). He also seeks an injunction to require TDCJ or UTMB to release copies of his medical records from March to April 2020 to him. (*Id.*). In addition, he seeks an injunction ordering TDCJ to provide him with copies of the grievances he filed in 2019 and 2020. (*Id.* at 16).

---

[4] An "APRI score" is the inmate's AST/Platelet Ratio Index. *See Mendez v. Chang*, Civil No. 2:18-cv-396, 2021 WL 5609855, at *2 (S.D. Tex. June 10, 2021). The score is useful to medical personnel in determining the degree of fibrosis or cirrhosis in the liver. *Id.*

5

The defendants moved to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entry No. 8). Perkins filed a timely response to the motion, to which he attached additional medical records. (Docket Entry No. 14). The defendants have not objected to Perkins's reliance on these additional medical records, which were made or created at the time of the events in question but which were not available to Perkins when he initially filed his complaint.

## II. LEGAL STANDARDS

### A. Actions Under 42 U.S.C. § 1983

Perkins brings his claims against the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). When the facts alleged by the plaintiff, taken as true, do not show a violation of a constitutional right, the complaint is properly dismissed for failure to state a claim. *See, e.g., Samford v. Dretke,* 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 421 (5th Cir. 2006).

6

B. **Motion to Dismiss**

The defendants have moved to dismiss Perkins's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction to hear the case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Such a motion is properly granted when the Court lacks the statutory or constitutional power to hear the case, such as when the claims alleged are barred by a state's sovereign immunity. *See High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. 2019) (per curiam) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005)).

A motion under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020). However, to survive a motion to dismiss, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gomez*, 18 F.4th at 775. For a claim to be plausible on its face, it must

allege facts showing that the entitlement to relief is "more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### C. *Pro Se* Pleadings

Because Perkins is representing himself, the Court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this liberal standard, *pro se* litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). They must also "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

### III. ANALYSIS

#### A. Official Capacity Claims

##### 1. Claims for Damages

To the extent that Perkins sues the defendants in their official capacities for money damages, his claims are barred under the doctrine of sovereign immunity. Sovereign immunity bars actions against a state or state official unless Congress has abrogated such immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not abrogate the states' sovereign

immunity when it enacted section 1983. *Id.* And the State of Texas has not waived its sovereign immunity for purposes of section 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App. – Houston [14th Dist.] Aug. 14, 2014, pet. denied) (the Texas Legislature has not waived sovereign immunity for any claim brought under section 1983). Since immunity has not been waived, it bars Perkins's claims for damages against the defendants in their official capacities.

The fact that Perkins has sued state employees, rather than the state itself, does not change this analysis. When a government employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity" (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978))). Perkins's claims for money damages against each of the defendants in their official capacities are construed as claims against the State of Texas. These claims are barred by sovereign immunity and are dismissed with prejudice.

2. **Claims for Injunctive Relief**

Perkins also seeks injunctive relief against the defendants in their official capacities, asking this Court to order the defendants to provide him with copies of his medical and grievance records. (Docket Entry No. 1, pp. 15-16). When a plaintiff makes a claim for

injunctive relief in a section 1983 action, sovereign immunity bars the claim if it is based on a past, rather than an ongoing, violation of federal law. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). If "there is no continuing violation of federal law to enjoin in this case, an injunction is not available." *Id.* at 71.

In his response to the defendants' motion to dismiss, Perkins admits that he has now received the medical records he was seeking. (Docket Entry No. 14, p. 3). Because any possible violation of federal law relating to his medical records is no longer ongoing, Perkins is not entitled to injunctive relief on this claim. And while Perkins does not allege that he has received the grievance records he seeks, he does not show that the failure to provide him with copies of his grievance records constitutes a violation of federal law—a necessary element of a claim under section 1983. Perkins's claims for injunctive relief are therefore dismissed for failing to state a claim upon which relief can be granted.

### B. Individual Capacity Claims

Perkins also sues each of the defendants in their individual capacities based on their alleged violations of his Eighth Amendment rights. The Eighth Amendment protects prisoners from cruel and unusual punishment arising from prison officials' deliberate indifference toward a prisoner's injury or pain. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prevail on a deliberate indifference claim, the prisoner must prove that the prison official acted with "deliberate indifference" to a "serious medical need" in a manner that "constitutes the unnecessary and wanton infliction of pain[.]" *Id.* at 104 (cleaned up); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S.

294, 297 (1988)). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (cleaned up).

To establish deliberate indifference, the plaintiff must show that the defendant both "knows that inmates face a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019). This standard is "extremely high." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Neither do "[u]nsuccessful medical treatment, acts of negligence, . . . medical malpractice" or "a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (cleaned up). Instead, "the prisoner must prove that the officials, despite their actual knowledge of the substantial risk [of serious harm], denied or delayed the prisoner's medical treatment." *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). This requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (cleaned up).

### 1. Senior Warden Townsend

Perkins alleges that Warden Townsend is liable to him for deliberate indifference under two different theories: first, under a theory of supervisory liability because he "was the overseer of the employees, including the medical department staff" at TDCJ's Jester III Unit; and second, under a theory of personal liability because he "elected not to get involved" in the scheduling with Hospital Galveston despite knowing of the seriousness of Perkins's condition. (Docket Entry No. 1, p. 18).

To the extent that Perkins seeks to hold Warden Townsend liable under a theory of supervisory liability, he does not state a viable claim. Under section 1983, supervisory officials may not be held liable for the actions of their subordinates under a theory of vicarious liability. Instead, the supervisory official must have been either "personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Driver*, 848 F.3d 678, 695-96 (5th Cir. 2017); *see also Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) (noting that section 1983 does not provide a cause of action based on the actions of subordinates). Perkins's claim that Warden Townsend is liable under section 1983 based on the alleged failings of the medical staff is a claim for supervisory liability that is not actionable under section 1983. The claim against Warden Townsend based on supervisory liability fails to state a claim upon which relief can be granted.

However, Perkins also seeks to hold Warden Townsend liable for his own failure to

act, which Perkins's alleges shows the warden's deliberate indifference to Perkins's serious medical needs. Perkins alleges that Warden Townsend saw the growing lesion on his face on several occasions, expressed concern about his well-being, and took his name and inmate number so that he could attempt to secure an earlier appointment for Perkins at Hospital Galveston for diagnosis and treatment. Nevertheless, Perkins's appointments were never rescheduled to an earlier date. Perkins alleges that these facts show that Warden Townsend was aware of Perkins's serious medical needs but intentionally disregarded them by failing to take reasonable measures to abate them, i.e., by failing to make a telephone call to secure an earlier appointment for Perkins to be treated.

These allegations, which the Court must take as true at this stage of the proceedings, are sufficient to allege a claim for deliberate indifference by Warden Townsend in his personal, rather than supervisory, capacity. Warden Townsend's comments, expressions of concern, and offer to try to secure an earlier appointment demonstrate that he was subjectively aware of the serious nature of Perkins's condition. *See Easter*, 467 F.3d at 463 (noting that the deliberate indifference standard requires a showing that the official is subjectively aware of the risk of harm). Warden Townsend was aware of Perkins's imminent release from TDCJ custody, and his failure to assist in securing an earlier appointment for Perkins could, if proven, show that he intentionally failed to take reasonable steps to abate the harm Perkins was suffering.

Accordingly, Perkins's complaint contains sufficient allegations to state a claim that Warden Townsend was personally involved in the alleged constitutional deprivation

13

suffered by Perkins. Warden Townsend's motion to dismiss the damages claim against him in his personal, rather than supervisory, capacity is **denied**.

### 2. Dr. Hulipas and Nurse Practitioner Beck

Perkins alleges that Dr. Hulipas and Nurse Beck are liable to him under section 1983 for their deliberate indifference because they neither treated his skin cancer nor made timely arrangements for any other provider to treat him.

Perkins alleges, and the medical records show, that both Dr. Hulipas and Nurse Beck identified the lesion on Perkins's face as a possible skin cancer on March 4, 2020. Perkins alleges that both Dr. Hulipas and Nurse Beck were also aware that he was soon to be released from TDCJ custody. While Dr. Hulipas ordered an expedited appointment for Perkins with the Hospital Galveston dermatologist, that appointment was scheduled for April 7, 2020—more than a month later. In addition, when that appointment was canceled by Hospital Galveston, neither Dr. Hulipas nor Nurse Beck contacted Perkins, nor did they make any attempt to reschedule it. Only after Perkins came to the medical department on April 8 to question why he had not been transported was the appointment rescheduled.[5] And even then, the appointment was rescheduled for April 21—almost two weeks later. Reading Perkins's complaint liberally, he alleges that Dr. Hulipas and Nurse Beck were deliberately indifferent because they did not schedule his Hospital Galveston appointment for an earlier date and made no attempt to reschedule it after it was canceled.

---

[5] The fact that no arrangements were made to escort Perkins to the scheduled appointment on April 7 gives rise to an inference that prison officials were aware that the appointment had been canceled.

14

Delays in medical treatment may be unconstitutional if they are the result of a prison official's deliberate indifference and if they result in substantial harm. *See, e.g., Easter v. Powell*, 467 F.3d 459, 464-65 (5th Cir. 2006); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). This includes an intentional failure to schedule, or an intentional delay in scheduling, an appointment with a specialist for additional care. *See, e.g., Thomas v. Carter*, 593 F. App'x 338, 343-44 (5th Cir. 2014); *Miles v. Rich*, 576 F. App'x 394, 396-97 (5th Cir. 2014) (unjustified delays in surgery can constitute deliberate indifference). It also includes delays in a prisoner's treatment for non-medical reasons. *See Smith v. Linthicum,* No. 21-20232, 2022 WL 7284285, at *5 (5th Cir. Oct. 12, 2022) (holding that delays in treatment for any reason other than genuine medical judgment could evidence a wanton disregard for serious medical need); *Delaughter v. Woodall,* 909 F.3d 130, 138 n.7 (5th Cir. 2018) (same).

Perkins alleges that just such an unjustified delay occurred in his case, which resulted in his skin cancer being left to grow untreated. He alleges that Dr. Hulipas and Nurse Beck delayed his appointments in the hope that he would be released from TDCJ custody before the appointments occurred, thereby preventing TDCJ from having to provide cancer treatments. He also alleges that the delays resulted in the need for a much more extensive surgery after he was extradited to Tennessee. These allegations are sufficient to state a claim for deliberate indifference based on delays in treatment due to non-medical reasons.

In their motion to dismiss, Dr. Hulipas and Nurse Beck point to the medical records

attached to Perkins's complaint to show that they did not ignore Perkins's complaints. However, the medical care provided to a prisoner must be adequate considering the severity of the prisoner's condition and professional norms. *See Farmer*, 511 U.S. at 832. While these medical records might be sufficient to rebut a claim that Dr. Hulipas and Nurse Beck ignored Perkins's complaints, the records do not address Perkins's claim of an unconstitutional delay in providing treatment. Both Dr. Hulipas and Nurse Beck identified the lesion as a possible skin cancer—a serious condition—on March 4, 2020. Nothing in the attached medical records explains why Perkins was neither diagnosed nor treated in any way before his release two months later. The records do not show that either Dr. Hulipas or Nurse Beck acted with the urgency commensurate with a likely cancer diagnosis or that they provided timely and adequate care to Perkins. These records, standing alone, do not overcome Perkins's allegations of an unconstitutional delay in receiving treatment.

Perkins's allegations against Dr. Hulipas and Nurse Beck are sufficient to state a claim against them for deliberate indifference arising from the delays in treatment. The motion to dismiss Perkins's claims for damages against Dr. Hulipas and Nurse Beck individually is **denied**.

### 3. Physician's Assistant Wilkins

Finally, Perkins alleges that Physician's Assistant Wilkins is liable to him under section 1983 because he was deliberately indifferent to Perkins's Hepatitis C, repeatedly refusing to provide Perkins with medication or other treatment despite his numerous requests for treatment.

The medical records attached to Perkins's complaint show that, while P.A. Wilkins regularly saw Perkins for monitoring of his Hepatitis C, no treatment was provided. The lack of treatment continued even after Perkins was diagnosed with "significant fibrosis" of his liver and after his APRI score exceeded the level set for treatment under TDCJ policies. Perkins alleges that he repeatedly requested treatment, but that P.A. Wilkins refused to provide or refer him for treatment, in contravention of TDCJ's own treatment guidelines and policies.

Taken as true, Perkins alleges that P.A. Wilkins intentionally treated him incorrectly by failing to treat him in accordance with TDCJ's Hepatitis C treatment guidelines and policies. These allegations state a claim for deliberate indifference that is sufficient to withstand a motion to dismiss. *Compare Grumbles v. Livingston*, 706 F. App'x 818, 819-20 (5th Cir. 2017) (affirming dismissal of deliberate indifference claim when the records showed that the prisoner was treated in accordance with TDCJ Hepatitis C policies); *McCorkel v. Gomez*, No. 7:21-cv-334, 2021 WL 9476908, at *4 (S.D. Tex. Nov. 18, 2021) (finding no deliberate indifference when TDCJ physician's denied treatment in accordance with TDCJ's Hepatitis C treatment guidelines). P.A. Wilkins's motion to dismiss Perkins's damages claim against him individually is **denied**.

## IV. CONCLUSION

For the above reasons, the defendants' motion to dismiss (Docket Entry No. 8) is **GRANTED** as to Perkins's claims against the defendants in their official capacities and **GRANTED** as to his claim against Warden Townsend based on supervisory liability. The

motion is also **GRANTED** as to Perkins's claims for injunctive relief. These claims are **DISMISSED** with prejudice.

The motion to dismiss is **DENIED** as to Perkins's claims for damages against Warden Townsend individually based on his personal actions, and as to the claims for damages against Dr. Hulipas, Nurse Beck, and Wilkins individually.

The defendants shall answer Perkins's complaint or file a dispositive motion **within 60 days** from the date of this Order.

SIGNED at Houston, Texas on ___14 February___, 2023.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE