United States District Court
Southern District of Texas
**ENTERED**
August 29, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MILTON KEITH PERKINS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. H-21-3962 |
| v. | § | |
| | § | |
| LONNIE TOWNSEND, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this *pro se* state inmate civil lawsuit is plaintiff's motion to qualify his proposed expert witness. (Docket Entry No. 55.) Plaintiff asks the Court to qualify Kenneth Wayne Parnell as an expert medical witness and accept his opinions as to the actions of defendants Martha L. Beck, N.P., and Edgar Hulipas, M.D., for purposes of defendants' pending motion for summary judgment. Parnell has submitted an affidavit setting forth his proposed testimony. (Docket Entry No. 57.)

Having considered the motion, the proposed affidavit testimony, the pleadings, and the applicable law, the Court **DENIES** plaintiff's motion for the reasons explained below.

**I. BACKGROUND**

Plaintiff claims in this section 1983 lawsuit that the defendants violated his Eighth Amendment rights and were deliberately indifferent to his serious medical need for treatment of a skin cancer lesion on his head. Kenneth Wayne Parnell, plaintiff's proposed expert

medical witness, is a convicted prisoner who is serving thirty-year sentences for second degree murder and attempted first degree murder. (Docket Entry No. 55, 57.) He is incarcerated with plaintiff at the Tennessee Riverbend Maximum Security Institution.

Inmate Parnell states in his affidavit that, prior to his convictions, he was licensed as a practical nurse (a licensed vocational nurse) by an undisclosed nursing board and worked in Georgia, Alabama, and Tennessee. His affidavit shows that his nursing license lapsed some sixteen years ago in 2007 following his convictions, and he has not worked as a nurse since that time. He states that forty years ago while in the army he began receiving training in in-patient and out-patient emergency nursing care and critical nursing care, and that his "advance [sic] training in a clinical setting included becoming proficient in minor surgical procedures such as removal of ingrown toenails and minor suturing as well as emergency care." He states that he had extensive military and civilian triage experience and training.

Parnell's affidavit reveals no formal education or degrees in medicine and he is not, nor has he ever been, licensed by any medical board to provide medical care or services. He is not licensed to diagnose and treat any medical condition. Significantly, he has no formal training, education, certification, licensing, or experience in the medical evaluation, diagnosis, treatment, and prognosis of skin cancer. His training and knowledge regarding skin cancer is limited to such basic information as recognizing the signs of potential skin cancer, assisting in referrals of potential skin cancer patients to a medical doctor, and the importance of referring such patients for medical evaluation and treatment. He further

2

discloses no training, education, knowledge, or experience in the providing of medical care in correctional institutions or in the policies and practices of institutional correctional care promulgated by the Texas Department of Criminal Justice ("TDCJ"). To the contrary, inmate Parnell's awareness of correctional care policies and procedures is limited to his reading of policy and procedure materials supplied by plaintiff in this lawsuit.

In his affidavit (Docket Entry No. 57), Parnell states that he read plaintiff's medical records and other litigation materials, including defendants' summary judgment affidavit of UTMB-CMC Regional Medical Director James D. Geddes, M.D. Inmate Parnell essentially disagrees with physician Geddes's opinions regarding the medical care provided by the defendants, and argues that plaintiff needed "urgent" care, not "expedited" care. Parnell proposes to testify that defendants' expedited care versus urgent care "resulted in catastrophic damage to plaintiff." In short, Parnell posits that defendants Beck and Hulipas failed to provide the proper standard of medical care in plaintiff's case.

## II. ANALYSIS

A. <u>Standard of Care is Not an Eighth Amendment Issue</u>

Plaintiff claims in this section 1983 lawsuit that the defendant medical care providers violated his Eighth Amendment rights and were deliberately indifferent to his serious medical needs. He states that inmate Parnell is of the opinion that the defendants "were not in keeping with sound medical standards and practices."

A plaintiff asserting a claim under section 1983 is not required to establish, via expert testimony, the applicable standard of care as a threshold issue, because a medical malpractice claim brought under state law is wholly distinct from a constitutional violation brought under federal law. *See, e.g., Bass v. Sullivan*, 550 F.2d 229, 231 (5th Cir. 1977); *Pierson v. Gonzales*, 73 F. App'x 60, 60 (5th Cir. 2003) (per curiam). Indeed, proof of medical malpractice alone is insufficient in this circuit to prove a constitutional violation. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). "It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). The failure to alleviate a significant risk that medical personnel should have perceived, but did not is insufficient to show deliberate indifference. *Id.*

Regardless, inmate Parnell is not qualified to render an opinion as to the standard of care provided by defendants in this case, as discussed below.

B. <u>Summary Judgment Evidence</u>

Under Federal Rule of Civil Procedure 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Thus, while the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017).

Given a liberal construction, plaintiff's pending motion asks this Court to find that inmate Parnell's proposed affidavit testimony meets the evidentiary requirements of Federal Rule of Evidence ("FRE") 702 for admissibility as expert witness summary judgment evidence. A close analysis of the requirements of Rule 702 and review of Parnell's affidavit testimony lead this Court to conclude that Parnell's proposed affidavit testimony is not admissible under Rule 702.

C. FRE 702

Under the current version of FRE 702, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

   (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

   (b)   the testimony is based on sufficient facts or data;

   (c)   the testimony is the product of reliable principles and methods; and

   (d)   the expert has reliably applied the principles and methods to the facts of the case.

That is, if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion. Thus, "[t]he court may admit proffered expert testimony only if the proponent, who

bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

In determining whether to allow expert opinion testimony, a court must first decide whether the witness is qualified as an expert by knowledge, skill, experience, training, or education. A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a particular subject. *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999).

Here, inmate Parnell's affidavit testimony provides no basis for finding him qualified by knowledge, skill, experience, training, or education to offer expert witness medical testimony as to the medical evaluation, diagnosis, treatment, and prognosis of plaintiff's medical conditions, particularly as to his skin cancer. That Parnell, as a former licensed practical nurse, was trained to recognize the distinguishing characteristics of skin cancer, appreciate their significance, and know that the patient should be referred to an appropriate medical specialist for diagnosis and treatment is far removed from qualifying as an expert medical witness in the evaluation, diagnosis, treatment, and prognosis of skin cancer. For example, inmate Parnell is not qualified to proffer an opinion that, "If the defendant-healthcare providers ordered an urgent referral and specialty intervention to a dermatological specialist then they would have most certainly prevented [plaintiff] from having to suffer the nerve damage (inability for facial movement), blindness (loss of peripheral vision) and

extreme pain and numbness." Nor is he qualified to opine that plaintiff has "life-long complications requiring lasting life-long medical treatment from qualified specialists," will "most certainly suffer chronic headaches and throbbing pain," or that the harm to plaintiff "was easily preventable." Parnell's proposed testimony is not based on a reasonable degree of medical probability that, had defendants provided "urgent" care versus "expedited" care, plaintiff's injuries would not have occurred.

Moreover, Parnell discloses no training, education, knowledge, or experience in currently recognized standards of medical care for skin cancer. He is not qualified to render an opinion as to the relevant standards of medical care applicable in plaintiff's case or whether defendants met such standards of care. Indeed, he sets forth no current, relevant standards of medical care for the evaluation, diagnosis, and treatment of skin cancer and he establishes no factual basis for rendering an opinion that the defendants "were not in keeping with sound medical standards and practices."

Parnell further discloses no training, education, knowledge, or experience in the providing of medical care in correctional institutions or in the policies and practices of institutional correctional care. As noted earlier, inmate Parnell's awareness of correctional care policies and procedures is limited entirely to his reading of TDCJ policy and procedure materials obtained from plaintiff in this lawsuit. He is not qualified to opine that "an urgent referral would have most certainly been approved by the Utilization Review Department and

timely intervention surgery would have been accomplished." Parnell's proposed testimony is without any objective foundation in fact or data and is not expert testimony.

Nor does inmate Parnell show that he is qualified to express opinions as to the subjective nature of the defendants' actions, such as his opinion that they "purposefully avoided" making necessary referrals for plaintiff and "deliberately" delayed his care, or that they "knew of and disregarded the excessive risk to [plaintiff's] health" in their timing of the biopsy. Indeed, such opinions arguably state inadmissible legal conclusions and are not based in sufficient facts or data. *See, e.g., Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("[A]n expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible."); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (holding that an expert witness's testimony regarding whether defendant's lack of concern constituted deliberate indifference or conscious disregard was inadmissible and did not aid the trier of fact).

Moreover, much of Parnell's proposed testimony does not constitute evidence relevant to the lawsuit. To be relevant, expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). Parnell's testimony does not satisfy this requirement. For instance, Parnell states in his affidavit that plaintiff's skin lesion showed all the "distinguishing features" of skin cancer; however, there is no factual dispute that the defendants thought the lesion looked cancerous. Plaintiff admits that defendants Beck and Hulipas both said that the lesion looked

8

like skin cancer when they first saw it, resulting in their referral of plaintiff to a dermatology specialist. (Docket Entry No. 1, p. 5.) Nor is there any dispute that, generally speaking, skin cancer can be a dangerous condition needing prompt evaluation and treatment or that it can metastasize. Moreover, Parnell's paraphrasing of the medical records does not constitute relevant evidence, as it provides the same information the Court itself could gain from reading the records. Such testimony, and inmate Parnell's rank speculation as to what could have happened under different circumstances or what could happen in the future, is unhelpful to this Court and to a finder of fact.

In short, plaintiff does not establish under Rule 702 that inmate Parnell is qualified to proffer the proposed opinions appearing in his affidavit.

### III. CONCLUSION

For the above reasons, plaintiff's motion to qualify inmate Kenneth Wayne Parnell as an expert medical witness for summary judgment purposes (Docket Entry No. 55) is **DENIED**. Parnell's affidavit testimony (Docket Entry No. 57) is not admissible expert witness evidence and the affidavit is **ORDERED STRICKEN FROM THE RECORD**.

Signed at Houston, Texas, on this the 28th day of August, 2023.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE